# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

JOSEPH ADAMS                                                   **PLAINTIFF**

VS.                        **CIVIL ACTION NO. 1:07cv1083-HSO-JMR**

RETA LUMPKIN                                          **DEFENDANT**

_____

## REPORT AND RECOMMENDATIONS

This matter is before the Court pursuant to a Motion [34-1] for Summary Judgment filed by the Defendant on February 18, 2009. To date, Plaintiff has not filed a Response in Opposition. The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, finds that the Defendant's Motion [34-1] for Summary Judgment should be granted. Accordingly, the Plaintiff's Complaint in the above-captioned action should be dismissed.

## STATEMENT OF THE CASE:

On September 17, 2007, Plaintiff filed this *pro se* § 1983 action against Pearl River County and Nurse Rita Lumpkin, alleging that he suffered violations of his constitutional rights while being held as a pretrial detainee at the Pearl River County Jail (hereinafter "the Jail"). In his Complaint and Amended Pleadings [7-1] Plaintiff alleges that his requests for medical attention were ignored by the staff of the Jail. Further, Plaintiff alleges that he suffers from rheumatoid arthritis, and as a result his mobility is restricted in such a manner as to necessitate the use of a wheelchair. Plaintiff contends that his disability is such that, in his opinion, he should be permitted to use a wheelchair at all times within the Jail. However, Plaintiff alleges that Defendant Lumpkin limited his access to a wheelchair. As a result, Plaintiff alleges that he fell in the shower and suffered injury.

## STANDARD OF REVIEW:

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

**APPLICABLE LAW**:

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights.  Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States.  *White v. Thomas*, 660 F. 2d 680,693 (5th Cir. 1981).  A plaintiff cannot succeed merely by showing any deprivation of his rights.  Section 1983 was intended to protect rights protected by federal law.  *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).

As a pretrial detainee, Plaintiff's constitutional rights flow from the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Because they have not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979).   The Supreme Court has stated the distinction between conditions that may be constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial detainees as follows:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. *Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.*

*Ingraham v. Wright,* 430 U.S. 651, 671-72 (1977) (emphasis added).

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement" or "episodic act or omission." *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997) (en banc).   The

Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment." *Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir.1996). "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless" *Bell*, 441 U.S. at 539. "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. *Id.* at 561. "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir.1996).

When a pre-trial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights. *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001). When the alleged constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is appropriate. *Scott,* 114 F.3d at 53-54. To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. *See Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.1999).

### ANAYLSIS:

The Court notes that Pearl River County was dismissed as a Defendant by way of Order [8-1] dated November 1, 2007. Therefore, the only remaining Defendant in this action is Nurse Rita Lumpkin. An official capacity action cannot be maintained against Defendant Lumpkin, because she is not a policymaker for purposes of municipal liability. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). Accordingly, Plaintiff's claim must proceed against Defendant Lumpkin in her individual capacity only. *See Grosch v. Tunica County, Miss*., 2008 WL 114773, *9 (N.D. Miss. 2008).

There is no significant distinction between pretrial detainees and convicted inmates when the denial of medical care is at issue. *Gibbs*, 254 F.3d at 548. When an alleged constitutional violation for failure to provide adequate medical care stems from an episodic act or omission, the question is whether the state official acted with deliberate indifference to the individual's constitutional rights. *Id.* In order to prove deliberate indifference to serious medical needs, and thus a constitutional violation, a prisoner must show that the state official knew of and disregarded an excessive risk to inmate health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534-35 (5th Cir. 1999).

Deliberate indifference is more than mere negligence in providing or failing to provide medical treatment. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982). The law is clear that unsuccessful medical treatment, mere negligence, neglect, nor medical malpractice gives rise to a section 1983 cause of action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Furthermore, disagreement with medical treatment alone is insufficient to support a claim under section 1983. Rather, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Additionally, medical records or medication, diagnosis, and sick calls may rebut an inmate's allegation of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

The Court finds that Plaintiff's allegations, when viewed in conjunction with the evidence of record and the applicable law, do not raise a genuine issue as to whether Defendant Lumpkin was deliberately indifferent to his serious medical needs.

Plaintiff's allegations that he was denied medical treatment while incarcerated at the Jail are

flatly rebutted by the numerous medical records attached as exhibits to Defendant's Motion for Summary Judgment. Even when viewed in a light most favorable to Plaintiff, the evidence of record indicates that Plaintiff was provided with medical treatment on numerous occasions. Defendant Lumpkin saw Plaintiff regarding his request for a wheelchair on January 8, 2007. *See* Exhibit "C" attached to Motion [34-4]. On September 4, 2007, Plaintiff complained of blood in his urine, and he was given a urinalysis, examined for possible kidney stones, and provided medication. *Id.* On September 10, 2007, Plaintiff complained of numbness along his right side, and he was both examined and referred to a Dr. Gipson for consultation. *Id.* On September 19, 2007, Plaintiff again complained of numbness, and the records indicate that Plaintiff was examined and referred to a doctor. *Id.* Finally, on February 18, 2008, Plaintiff complained of bladder problems, and he was given a urinalysis and prescribed medication. *Id.*

Plaintiff's allegations that he received no treatment are clearly without merit. However, Plaintiff further alleges that Defendant Lumpkin exhibited deliberate indifference in refusing to provide him with a wheelchair due to his osteoarthritis. Plaintiff made a written request for a wheelchair on December 24, 2006. *See* Exhibit "C" attached to Motion [34-4]. Plaintiff was seen by Defendant Lumpkin and a medical history was taken. *See* Exhibit "C," Inmate History & Physical, attached to Motion [34-4]. After conducting the examination, Defendant Lumpkin denied Plaintiff's request for a wheelchair because she believed that his joints would benefit from the exercise. *Id*. Defendant Lumpkin later reiterated her opinion on Plaintiff's medical request sheet. *See* Exhibit "C" attached to Motion [34-4]. Plaintiff alleges that, without a wheelchair, he was forced to ambulate with a cane. Furthermore, Plaintiff alleges that he later fell in the shower and injured his back. *See* Complaint and Amended Pleadings [7-1].

Based upon the available evidence, the Court concludes that Plaintiff has failed to create a

genuine issue as to whether Defendant Lumpkin was deliberately indifferent to Plaintiff's medical needs. The record is clear that Plaintiff's request for a wheelchair did not go unanswered. Defendant Lumpkin took a physical and medical history of Plaintiff, and ultimately declined to issue him a wheelchair. Further, the records indicate that Defendant Lumpkin did not arbitrarily refuse to provide Plaintiff with a wheelchair, but rather she used her medical judgment to conclude that Plaintiff's joints would benefit from exercise. Therefore, Plaintiff cannot allege that Defendant Lumpkin ignored his complaint or failed to treat him.

Plaintiff's complaints regarding the care provided by Defendant Lumpkin, at best, constitute a disagreement with his treatment protocol. At worst, Plaintiff's allegations regarding Defendant Lumpkin's treatment constitute medical malpractice. However, the law is clear that neither theory will permit a recovery for damages under § 1983. Although Plaintiff clearly disagreed with the treatment protocol provided by Defendant Lumpkin, the Court notes that such a disagreement is insufficient to support an allegation of deliberate indifference. "If a dispute exists as to whether appropriate medical treatment was given, exceptional circumstances must exist for the claim to be actionable pursuant to section 1983." *Banuelos,* 41 F.3d at 235. The Court is simply unable to conclude that, based on the aforementioned allegations, Plaintiff is capable of proving any set of facts which would entitle him to pursue his claim against Defendant Lumpkin. Accordingly, the Court finds that Defendant Lumpkin is entitled to Summary Judgment on all claims.

## CONCLUSION:

Based on the forgoing analysis, this Court is of the opinion that Plaintiff has failed to meet his burden of demonstrating any genuine issues of material fact which would preclude summary judgment on his section 1983 claim. Therefore, this Court finds the Defendant's Motion [34-1] for Summary Judgment should be granted, and that all claims against the Defendant should be dismissed

with prejudice.

In accordance with the Rules of this Court, any party, within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United States Auto Ass'n*, 79 F.3d 1425 (5th Cir. 1996).

This the ___12th___ day of March, 2009.

_____s/ John M. Roper_____
CHIEF UNITED STATES MAGISTRATE JUDGE